# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# JONESBORO DIVISION

**WILLIE TINZIE**                                                      **PLAINTIFF**

**V.**                         **NO. 3:17-CV-215-BD**

**SOCIAL SECURITY ADMINISTRATION**                     **DEFENDANT**

## ORDER

**I.   Introduction:**

On April 21, 2015, Willie Tinzie applied for disability benefits, alleging disability beginning on September 24, 2014. (Tr. at 13) Mr. Tinzie's claims were denied initially and upon reconsideration. *Id.* After conducting a hearing, the Administrative Law Judge ("ALJ") denied Mr. Tinzie's application. (Tr. at 26) Mr. Tinzie requested that the Appeals Council review the ALJ's decision, but that request was denied. (Tr. at 1) Therefore, the ALJ's decision now stands as the final decision of the Commissioner. Mr. Tinzie filed this case seeking judicial review of the decision denying his benefits.

For the reasons stated below, the Court[1] reverses the ALJ's decision and remands for further review.

**II.   The Commissioner's Decision:**

The ALJ found that Mr. Tinzie had not engaged in substantial gainful activity since the alleged onset date of September 24, 2014. (Tr. at 15) At step two of the five-

---

[1] The parties consented, in writing, to the jurisdiction of a United States Magistrate Judge.

step analysis, the ALJ found that Mr. Tinzie had the following severe impairments: disorder of the back, diabetes mellitus, and anxiety with depression. (Tr. at 16)

After finding that Mr. Tinzie's impairments did not meet or equal a listed impairment (Tr. at 17), the ALJ determined that Mr. Tinzie had the residual functional capacity ("RFC") to perform light work with additional limitations. (Tr. at 19) He could only perform unskilled work, where the interpersonal contact is incidental to the work performed, and the complexity of tasks is learned and performed by rote, with few variables and requiring little independent judgment. *Id*. The supervision at the job must be simple, direct, and concrete, and Mr. Tinzie could not deal with the general public. *Id*.

The ALJ found that Mr. Tinzie was unable to perform any past relevant work. (Tr. at 24) At step five, the ALJ relied on the testimony of a Vocational Expert ("VE") to find, based on Mr. Tinzie's age, education, work experience and RFC, that he was capable of performing work in the national economy as inspector/hand packager and routing clerk. (Tr. at 25) The ALJ determined, therefore, that Mr. Tinzie was not disabled. *Id.*

## III. Discussion:

### A. Standard of Review

The Court's role is to determine whether the Commissioner's findings are supported by substantial evidence. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). "Substantial evidence" in this context means "enough that a reasonable mind would find it adequate to support he ALJ's decision." *Id. Slusser v. Astrue*, 557 F.3d 923, 925 (8th

Cir. 2009)(citation omitted). The Court must consider not only evidence that supports the Commissioner's decision, but also, evidence that supports a contrary outcome. The Court cannot reverse the Commissioner's decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (quoting *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)).

    B.   Mr. Tinzie's Arguments on Appeal

Mr. Tinzie contends that substantial evidence does not support the ALJ's decision to deny benefits because the record does not support the ALJ's finding that his diabetic peripheral neuropathy was a non-severe impairment. He also argues that the ALJ's hypothetical question to the VE did not account for limitations on concentration, persistence, and pace. Mr. Tinzie's final argument is that the ALJ improperly discounted his credibility.

The Court is persuaded that the ALJ erred with respect to the finding at step two that diabetic neuropathy was a non-severe impairment. The Court limits its discussion to that impairment.

Mr. Tinzie suffered from diabetes. In January 2014, Stephen Golden, M.D., who was Mr. Tinzie's primary physician, prescribed Glyburide and Metformin for diabetes. (Tr. at 388-392) When Mr. Tinzie presented to Dr. Golden with headaches, sweating, and dizziness on March 21, 2014, Dr. Golden prescribed Byetta subcutaneous pen injections

twice daily.[2] (Tr. at 380-383). In September 2014, Dr. Golden prescribed Invokana, Glyburide, and Metformin for diabetes.

Mr. Tinzie's diabetes was complicated by peripheral neuropathy. He reported aching and tingling in his feet on September 3, 2014. (Tr. at 374-378) He presented on January 17, 2015, with a swollen and painful left foot. (Tr. at 360-363) He was diagnosed with skin abscess to the left toe and ascending cellulitis.[3] *Id*. His doctor incised and drained the toe. *Id*. Mr. Tinzie was prescribed Toradol for pain. *Id.* On January 26, 2015, Dr. Golden noted that the abscess was slow in healing, so he kept Mr. Tinzie off work for a week. (Tr. at 354-356). On February 18, 2015, Dr. Golden referred Mr. Tinzie to a podiatrist. (Tr. at 350-351)

On February 23, 2015, Mark Reiner, D.P.M., a podiatrist, conducted a comprehensive diabetic foot exam. (Tr. a 321-323) Mr. Tinzie complained of foot pain. *Id*. Dr. Reiner noted a history of "diabetic sensory motor distal symmetrical peripheral neuropathy." (Tr. at 322) He found the left toe to be very tender and swollen. *Id*. There was pain with passive motion and limited flexion and extension. *Id*. Dr. Reiner found bilateral paresthesia, burning, and edema. *Id*. There was bilateral diminished dorsal and tibial pulses, nail and pigmentary changes, red skin color bilaterally, and shiny skin

---

[2] Byetta stimulates insulin secretion in response to rising blood sugars. https://www.mayoclinic.org/diseases-conditions/type-2-diabetes/expert-answers/byetta/faq-20057955

[3] Patients with diabetic neuropathy may be predisposed to foot infections and cellulitis. https://emedicine.medscape.com/article/237378-overview#a2

texture bilaterally. *Id*. Sharp 2-point pain was elicited with Semmes-Weinstein monofilament wire.[4] *Id*. Deep tendon reflexes were diminished. *Id.* Positive C class findings included temperature change, paresthesia, burning, and edema in both feet. *Id.*

Dr. Reiner's musculoskeletal examination revealed mild to moderate deformities and contractures of the lesser digits, with hammertoe and hallux valgus formations. *Id*. Equinus deformity was noted bilaterally and an x-ray of the left foot revealed a toe fracture. *Id*. Dr. Reiner diagnosed symmetrical peripheral neuropathy, hypertrophic nails/onychomycosis, ingrown nail, equinus foot deformities, toe fracture, and tinea pedis.[5] *Id*. Dr. Reiner prescribed a surgical shoe. (Tr. at 323)

On March 16, 2015, Mr. Tinzie returned to Dr. Reiner with foot pain and swelling. (Tr. at 324) Dr. Reiner kept Mr. Tinzie off work. *Id*. On April 6, 2015, Mr. Tinzie reported continued discomfort in his shoes and with walking. (Tr. at 325) On April 27, 2015, Mr. Tinzie returned to Dr. Golden for tenderness related to his toe cellulitis. (Tr. at 343) Dr. Golden agreed that Mr. Tinzie should seek disability, as he did not feel he could continue at his regular job. *Id*. On May 6, 2015, a check-up with Dr. Reiner revealed the fracture of the toe had healed, but Mr. Tinzie still complained of foot pain and leg cramps. (Tr. at 326)

---

[4] The Semmes-Weinstein monofilament wire is the standard screen for loss of protective sensation. http://www.woundsresearch.com/article/foot-sensation-testing-patient-diabetes-introduction-quick-easy-assessment-tool

[5] Patients with diabetes face a higher risk of tinea pedis, which can lead to complications. https://www.podiatrytoday.com/treating-tinea-pedis-patients-diabetes

On May 6, 2015, Dr. Golden filled out an Essential Job Function Questionnaire. (Tr. at 210) He indicated that Mr. Tinzie could not stand or walk for extended periods, or climb or descend stairs or ladders. *Id.* He labeled Mr. Tinzie's disability as permanent. *Id.*

Mr. Tinzie argues that the medical records support a determination that diabetic peripheral neuropathy is a severe impairment. The claimant has the burden of proving that an impairment is severe, which by definition significantly limits one or more basic work activities. *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); 20 C.F.R. § 404.1521(a). A physical or mental impairment must last or be expected to last not less than 12 months. *Karlix v. Barnhart*, 457 F.3d 742, 746 (8th Cir. 2006). If the impairment would have no more than a minimal effect on the claimant's ability to do work, then it does not satisfy the requirement of step two. *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007).

The ALJ did not discuss Dr. Reiner's findings on neuropathy. He only said that neuropathy was not a severe impairment because no nerve conduction studies were performed. Complaints of severe pain stemming from neuropathy need not be confirmed by diagnostic tests. *Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015). Even though nerve conduction studies were not performed, Dr. Reiner, a specialist in the field, conducted a thorough clinical examination and followed Mr. Tinzie for four months. His conclusions mirrored those of Dr. Golden, who diagnosed neuropathy in the prior year. And Mr. Tinzie was treated with medication for diabetes throughout the relevant time-

period, which supports the diagnosis of diabetic neuropathy. Dr. Golden also kept Mr. Tinzie off work, and prescribed a diabetic shoe. The opinions of Dr. Golden and Dr. Reiner should have been given more weight.

The ALJ relied heavily upon the opinions of two non-examining state agency medical consultants. They did not reference Dr. Reiner's diagnoses in their explanations or mention the function report from Dr. Golden. Like the ALJ, these specialists appear to have glossed over the podiatrist's opinion. The ALJ erred by not discussing Dr. Reiner's examination findings because a treating physician's opinion must be discussed by the ALJ and, if rejected, reasons are necessary. *Ingram v. Charter*, 107 F. 3d 598, 602 (8th Cir. 1997); *Prince v. Bowen*, 894 F.2d 283 (8th Cir. 1990). And relying solely upon non-examining medical consultants when well-documented treating physician opinions are available may be grounds for reversal. *Bowman v. Barnhart*, 310 F.3d 1080, 1085 (8th Cir. 2002) (instead of developing record from treating physician, ALJ "improperly relied on the report of a state consultant who did not examine" the claimant).

Mr. Tinzie's reports of his limited daily activities support his complaints of pain. He could not stand to cook or do house or yard work, due to pain. (Tr. at 214) He could walk only 30 steps, and had to sit a lot. (Tr. at 46, 217) He reported that sweeping, mopping, and driving exacerbated his pain. (Tr. at 203-204) He took Norco every four hours for pain, but the medication did not provide relief. (Tr. at 42)

While finding an impairment to be severe does not automatically mean a claimant is disabled, it does require the ALJ to consider the evidence of that impairment with the same care that he gives to other severe impairments. And it requires that the RFC incorporate limitations caused by that impairment, if the record so suggests. The RFC in this case did not significantly limit walking or standing, and it did not raise any other postural limitations such as limitation in operating foot controls. Mr. Tinzie had problems with his feet, confirmed by clinical testing, and it is conceivable that he could not perform work at the level determined by the ALJ. However, the question of whether the RFC was proper need not be reached, because the ALJ failed to properly categorize diabetic neuropathy at step two.

**IV. Conclusion:**

For the reasons stated above, the Court finds that the ALJ's decision is not supported by substantial evidence. The ALJ erred by finding diabetic neuropathy to be a non-severe impairment at step two. The decision is hereby reversed and the case remanded with instructions for further review.

IT IS SO ORDERED this 1st day of May, 2018.

_____
UNITED STATES MAGISTRATE JUDGE